IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SEROCTIN RESEARCH & TECHNOLOGIES, INC, a Nevada Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>UNIGEN PHARMACEUTICALS, INC., a Colorado Corporation, UNIVERA LIFE SCIENCES, dba OASIS LIFE SCIENCES, a Colorado Corporation, and DOES 1-100,<br><br>Defendants. | ORDER AND MEMORANDUM DECISION<br><br><br><br>Case No. 2:07-CV-582 TC |

  This case involves a dispute over United States Patent No. 6,667,308 ("the '308 patent") and a licensing agreement for that patent. The '308 patent makes claims on various uses of several chemical compounds, including 6-methoxy-2,3-benzoxazolinone ("6-MBOA"). Seroctin Research & Technologies, Inc. ("SRT") holds the '308 patent and has entered into an agreement with Unigen Pharmaceuticals, Inc. ("Unigen") which grants Unigen a license in the '308 patent.

  In this action, SRT has alleged that Unigen and a related company, Univera, Inc. ("Univera"), are infringing Claim 16 of the '308 patent by Univera's marketing and selling certain products containing 6-MBOA for, among other things, stress. Claim 16 is for use of 6-MBOA as a treatment for depression. SRT further alleges that Unigen has breached the licensing agreement in various ways, focusing mainly on the fact that Unigen has not paid SRT royalties

for Univera's sales of 6-MBOA-containing products.

Before the court is SRT's motion for a preliminary injunction barring Unigen and Univera from making or selling products containing 6-MBOA.  SRT further seeks a recall of Univera's 6-MBOA-containing products by way of including that relief in its proposed order.  Also before the court are two motions by Unigen and Univera to strike portions of the record on this motion, which will be further addressed below.

Because SRT has requested a disfavored injunction, its motion is treated with heightened scrutiny.  The court concludes that at this time, SRT has not established that it is likely to succeed on the merits of its case, nor has it shown that irreparable harm would result if its proposed injunction did not issue.  Moreover, the balance of the potential harm and a consideration of the public interest do not clearly favor granting SRT's proposed injunction.  Because SRT has not met its heavy burden of showing that its proposed injunction should be granted, its motion is denied.

## BACKGROUND[1]

### The '308 Patent, the Parties, and the License

---

[1] The court has considered Unigen and Univera's motion to strike evidence under Fed. R. Evid. 408.  The court will grant in part and deny in part that motion.  To the extent that SRT uses statements made in the course of settlement discussions as proof of any fact bearing on its *prima facie* case for a preliminary injunction, including balancing the harms, the court will not consider them (with one exception).  The materials the court will not consider on the merits of the preliminary injunction include all of the exhibits identified by Unigen and Univera, as well as statements made by Unigen and Univera's counsel to SRT's counsel in settlement negotiations.  Nor will the court consider arguments based on these facts.  The one fact initially established by the settlement materials that the court will consider is Univera's labeling certain products with the '308 patent, as this would have been discoverable otherwise.  See Fed R. Evid. 408 advisory committee's notes.  Moreover, Unigen and Univera do not deny this labeling occurs and have made arguments about its legal effect.  On the other hand, the court will consider all of the settlement materials for the narrow purpose of rebutting Unigen and Univera's assertion that SRT's delay in bringing a motion for preliminary injunction negates irreparable harm. Because the settlement materials have some permissible uses here, the court will not strike them.

SRT manufactures and sells a product called Seroctin, which contains 6-MBOA. SRT generally produces Seroctin by extracting 6-MBOA from young corn leaves. Seroctin has two forms: extract form and non-extract whole raw material form. SRT also holds the '308 patent, which issued on December 23, 2003. The '308 patent covers the use of various chemical compounds as "antidepressants, aphrodisiacs, and adjunctive therapies in humans." ('308 Patent, attached as Exhibit A to Johnson's Decl. in Support of SRT's Motion.) At issue here is Claim 16 of the '308 patent.[2]

Claim 16 covers "[a] process for treating depression in humans by the administration of a therapeutically effective amount of [6-MBOA]. . . " (Id. at Claim 16.) As evident from the '308 patent, 6-MBOA itself is not the invention: it appears to be naturally occurring and was the subject of various studies in plants and animals before the '308 patent application was filed. Nor does the '308 patent claim, in isolation, any particular method for producing or extracting 6-MBOA. Rather, the '308 patent makes claims on certain uses for 6-MBOA and certain ways of producing or extracting 6-MBOA for those purposes.

Unigen performs research and development of ingredients for dietary supplements. It also provides ingredients to related companies that market and sell dietary supplements. On March 1, 2005, SRT entered into a License and Exclusive Supply Agreement (the "License Agreement") with Unigen. The License Agreement defines "Seroctin" as a product in the scope of a claim or claims of the '308 patent. (License Agreement ¶ 1.3, attached as Exhibit E to

---

[2]At the January 22, 2008 hearing on this motion and in a subsequent filing, SRT argued for the first time that Unigen and Univera are infringing Claim 42 of the '308 patent. Because Unigen and Univera have not had an opportunity to fully respond, the court will not consider any argument concerning Claim 42 at this time.

Johnson's Decl. in Support of SRT's Motion.)  SRT granted Unigen the exclusive right to "use the ['308 patent] to market, sell, and otherwise commercialize [products containing Seroctin]" as dietary supplements.  (Id. at ¶ 2.1.)   SRT, however, reserved its right to sell the non-extract whole raw form of Seroctin to any other buyer.  (Id. at ¶ 2.3.)  Unigen agreed that it would pay SRT a royalty on sales of any product containing Seroctin by Unigen "or its Affiliates." (Id. at ¶ 6.2.)  "Affiliate" was defined as "any corporation or business entity over which UNIGEN has a right to exercise significant marketing, manufacturing or operational control by ownership, control of stock, or by contract."  (Id. at ¶ 1.15.)  The License Agreement also set out a price schedule for Unigen's purchase of Seroctin from SRT, which varied from $3.50 to $4.50 per kilogram depending on the concentration level of the compound.  (Id. at Appendix C.)

In August 2005, the License Agreement was amended twice, by Addendum I and Addendum II.  The addendums reduced the amount of royalty due on sales of products containing Seroctin and modified Unigen's exclusivity.  There is disagreement about which of the addendums controls, with one requiring a minimum royalty payment of $60,000 and the other requiring a payment of $120,000 to maintain the license.  Further, Addendum II has two alternative forms, the operation of one or the other conditioned on the cooperation of Protech, another SRT licensee.  The court was not directed to evidence on the question of which version of Addendum II is operative at this time.  In any event, both versions of Addendum II recite that SRT granted a non-exclusive license to Protech to sell products containing Seroctin.  In October 2005, there was a change in ownership of SRT, and this action is brought by the new owners.

Univera markets and sells dietary supplements.  Unigen and Univera are wholly or partially owned by Bill Lee, a Korean businessman, and are part of a group of companies known as the ECONET family.  Some of Univera's products contain an ingredient that Univera calls

Serinex. Serinex, which Univera describes as a proprietary blend, contains 6-MBOA. Univera markets some or all of its products containing Serinex as effective in treating stress. Univera obtains its supplies of 6-MBOA from at least three sources: SRT, Unigen, and Unigen, Inc. ("Unigen Korea"). It appears from the record that for several years before this suit was filed, Unigen Korea purchased Seroctin from SRT, had the Seroctin shipped to South Korea, and then sold the Seroctin to Univera for inclusion in Univera's products. It does not appear that Univera labels any of its products containing 6-MBOA with the Seroctin mark.

SRT sells or has sold Seroctin, in one form or another, to Unigen, Unigen Korea, and Univera. In contrast to the $3.50 to $4.50 per kilogram for which it sells Seroctin to Unigen, SRT sold Seroctin to Unigen Korea and Univera for $65 per kilogram. The record reflects that SRT sold Seroctin directly to Univera in May and June of 2007.

**The Present Dispute**

According to its brief, SRT was not aware that Univera was marketing and selling products containing 6-MBOA until about May 2007. At about that time, SRT tested a Univera product containing Serinex and found that Serinex contained 6-MBOA. Around the same time, SRT also realized that Unigen had not paid any royalties under the License Agreement. After Unigen did not respond to SRT's initial inquires about royalties, SRT filed suit on August 9, 2007.

In its complaint, SRT named as defendants Unigen, Univera, and various fictitiously-named defendants. SRT made claims of patent infringement, Lanham Act violations, state unfair competition, and breach of contract. Thereafter, the parties were involved in settlement discussions, but were unable to reach a compromise.

On December 7, 2007, SRT brought the present motion for a preliminary injunction.

SRT has based its motion on its asserted likelihood of success on its patent infringement and breach of contract claims. SRT has two main theories of liability that are relevant here. First, it argues that Univera is an "affiliate" of Unigen as defined by the License Agreement, so Unigen has breached the License Agreement by failing to pay royalties on Univera's sales of 6-MBOA-containing products. (SRT also asserts that Unigen is breaching the License Agreement in other ways.) If Unigen is in breach of the License Agreement, SRT reasons, then neither Unigen nor Univera have the right to practice the '308 patent and are infringing. Under its second theory of liability, SRT argues that if Univera and Unigen are not "affiliates" under the License Agreement, then Univera is infringing Claim 16 of the '308 patent by selling products containing 6-MBOA as a treatment for stress. Under this theory, Unigen is a contributory infringer for selling ingredients containing 6-MBOA to Univera.

Unigen and Univera counter that Univera is not a Unigen "affiliate" as defined by the License Agreement, and so Unigen owes no royalties to SRT on any of Univera's sales. Unigen and Univera further argue that marketing and selling products containing 6-MBOA as a treatment for stress does not infringe on Claim 16 of the '308 patent. If Univera is not directly infringing, then Unigen cannot be contributing to infringement by selling 6-MBOA to Univera.

## **ANALYSIS**

SRT specifically moved the court to order Unigen and Univera not to "make, use, sell, offer to sell, or import any product" that contains 6-MBOA. The proposed order submitted by SRT also proposes that the court instruct Unigen and Univera to issue a recall on Univera's products that contain 6-MBOA.

To obtain a preliminary injunction, SRT must establish that: (1) it will suffer irreparable injury unless the injunction issues; (2) the threatened injury to it outweighs whatever damage the

proposed injunction may cause Unigen and Univera; (3) its proposed injunction would not be adverse to the public interest if issued; and (4) it has a substantial likelihood of success on the merits of its claims.  See Schrier v. University of Colo., 427 F.3d 1253, 1258 (10th Cir. 2005). "As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." Id. (citation and internal quotation marks omitted).  Mandatory or status quo-altering injunctions are specifically disfavored and they "'must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course.'" Id. at 1259 (quoting O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 975 (10th Cir. 2004) (en banc)).

      Here, SRT has moved for an injunction that changes the status quo, that is, one which alters "the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing." Schrier, 427 F.3d at 1260 (citations and internal quotation marks omitted).  While determining the status quo can be tricky, it appears that as between Unigen and SRT, the last uncontested status was that Unigen was SRT's licensee, and that Unigen also bought Seroctin from SRT and sold it to certain customers with no objection by SRT.

      Moreover, the proposed injunction is mandatory in nature, since there is real possibility that the court would have to supervise Univera's compliance with an order to immediately halt a significant portion of its business operations and initiate a recall.  See id. at 1260 (injunctions which affirmatively require a party to act in a certain way and may require court supervision are mandatory).

      Given that SRT's injunction is disfavored, it must "make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms, and

may not rely on [the Tenth Circuit's] modified likelihood-of-success-on-the-merits standard." <u>O Centro</u>, 389 F.3d at 976.

**I.      Likelihood of Success on the Merits**

     A.     <u>Breach of the Licensing Agreement</u>

SRT's breach of contract claim primarily relies on the proposition that under the Licence Agreement, Univera is an "affiliate" of Unigen, triggering a duty by Unigen to pay royalties on Univera's sales of products containing 6-MBOA. It must be remembered that "affiliate" is not an affiliate in the ordinary sense of the word, but is defined in the License Agreement. Under the contract, to show that Univera is an "affiliate" of Unigen, SRT must present proof that Unigen "has a right to exercise significant marketing, manufacturing or operational control" over Univera "by ownership, control of stock, or by contract." (License Agreement ¶ 1.15.)

SRT points to several facts to support its contention that Univera is an "affiliate" of Univera. Unigen and Univera, for example, share the same address. Moreover, Unigen and Univera are members of the same family of companies, ECONET, which appears to be owned by Bill Lee. The ECONET companies have supportive and complementary roles, and are often referred to as sister companies or affiliates in press releases. SRT's main support for these propositions, which Unigen and Univera do not deny, are print-outs from various web pages, submitted both before and after the hearing on the preliminary injunction.

None of these facts amount to direct proof that Unigen has any sort of control over Univera, or that if it did, that such control came from ownership, control of stock, or by contract. SRT's strongest circumstantial proof on that Unigen and Univera could be "affiliates" is that they are both owned by Bill Lee. However, SRT has not submitted any evidence that would justify disregarding corporate formalities and treating the companies as alter egos of that individual.

Under a strict four-corners interpretation, then, it is not likely from the evidence currently on the record that SRT will be able to show that Unigen and Univera are "affiliates" under the License Agreement.

However, the analysis does not end there, since the parties have argued that regardless of the contract's language, there was a specific intent as to whether Univera would count as a Unigen "affiliate." Unigen and Univera argue that the parties drafted the definition to specifically exclude Univera as an "affiliate," while SRT argues that the parties must have intended for the marketing company to be included in a contract that included royalties on sales. Because the terms "affiliate" is ambiguous, the court can consider extrinsic evidence of the parties' intentions. See, e.g., Gillmor v. Macey, 121 P.3d 57, 70 (Ut. Ct. App. 2005).

Unigen and Univera submitted evidence that Univera was not meant to be an "affiliate" in the form of affidavits by the former SRT officers who signed the License Agreement. But the affiants were not available for cross examination at the hearing, and court will therefore not consider their affidavits.

Unigen and Univera maintain that SRT's charging Univera $65 per kilogram for Seroctin as opposed to the significantly lower prices of $3.50 to $4.50 per kilogram called for by the License Agreement is indirect evidence that SRT did not intend to treat Univera as a Unigen "affiliate." On the other side, SRT's argument that the parties must have intended to include the marketing company, Univera, in the License Agreement makes logical sense. But SRT has no proof to back up this contention  In the end, there is a dearth of evidence on the record about whether SRT and Unigen intended for Univera to be an "affiliate" at the time of contracting.

In sum, under a four-corners reading of the term "affiliate" in the License Agreement, SRT has not shown that it is likely to prevail on the merits because it has no direct evidence that

Unigen has any control over Univera by any means. On the question of whether the parties intended that Univera be as a Unigen "affiliate," there is not enough evidence at this time for the court to determine SRT's chances of success. Consequently, on the present record, it is simply unclear whether SRT can prove that Univera is an "affiliate" of Unigen under the Licence Agreement.

Nor has SRT has established a likelihood of success on its other breach claims. First, the License Agreement does not expressly require Unigen to spend $250,000 in research and development, but merely states that Unigen's investment is anticipated to be in excess of that amount. (See License Agreement ¶ 6.1.) Second, Unigen essentially admits that it has developed "know-how" regarding Seroctin that it has not yet shared with SRT, which SRT argues breaches Paragraph 14.4 of the License Agreement. (See id. at ¶ 14.4.) But Paragraph 14.4 does not require immediate sharing of such "know-how" with SRT; it requires that Unigen "promptly communicate and disclose to SRT" such "know-how." (See id.) Since it is not clear when Unigen developed this "know-how," the court cannot assess whether the failure to share such knowledge is a breach. Finally, there is too little on the record to make a firm initial determination on the rather expansive and complicated question of whether Unigen is using its "best commercial efforts" to exploit the technology in the License Agreement. (See id. at ¶ 8.1.)

      B.    <u>Patent Infringement</u>

To demonstrate the likelihood of success on its patent infringement claim, SRT must show that the '308 patent is valid and that it is likely to prove that Unigen and Univera are infringing that patent. See <u>Genentech, Inc. v. Novo Nordisk, A/S</u>, 108 F.3d 1361, 1364 (Fed. Cir. 1997). Unigen and Univera do not dispute the '308 patent's validity. Instead, they argue

that Univera's marketing and selling of products containing 6-MBOA to treat stress does not infringe on the '308 patent.

Here, SRT has not claimed a patent on 6-MBOA itself, but on the use 6-MBOA as a treatment for depression. Such a claim is akin to a process claim, which, according to the Federal Circuit, is "a different kind of invention; it consists of acts, rather than a tangible item. It consists of doing something, and therefore has to be carried out or performed." In re Kollar, 286 F.3d 1326, 1332 (Fed. Cir. 2002). See also Joy Techs., Inc. v. Flakt, Inc., 6 F.3d 770, 775 (Fed. Cir. 1993) ("In the present case, the patent contains only method claims, which. . . are directly infringed only when the method is practiced.").

SRT has made a clear showing that Univera markets certain products containing 6-MBOA as treatments for stress. On the other hand, SRT has not pointed to any direct evidence that Univera markets any such product as a treatment for depression; Unigen and Univera further point out that Univera is in fact prohibited from doing so by FDA regulation.[3] The question is, then, does Univera infringe Claim 16 of the '308 patent by marketing and selling products containing 6-MBOA as a treatment for stress? In other words, is treating "stress" the same as treating "depression" as used in Claim 16?

The answer depends on how the court construes the term "depression" as used in Claim 16. Several considerations are important in addressing this question. First, on a motion for a preliminary injunction in a patent infringement dispute, a court is not required to engage in a comprehensive and final claim construction  See Sofamor Danek Group, Inc. v. DePuy-Motech,

---

[3]This argument may cut both ways, since SRT argued at the hearing on this motion that because of this prohibition, marketers of dietary supplements will use terms like "reduces stress" and "has calming effects" as codes for "treats depression." While this assertion might have some persuasive value, there is no evidence on the record to support it.

Inc., 74 F.3d 1216, 1221 (Fed. Cir. 1996) (holding that trial courts have no obligation to "conclusively and finally" interpret claims when considering a preliminary injunction). Further, when construing a claim term:

> ... a court first considers the intrinsic evidence, starting with the language of the claims. Generally claim terms should be construed consistently with their ordinary and customary meanings, as determined by those of ordinary skill in the art. While in some cases there is a presumption that favors the ordinary meaning of a term, the court must first examine the specification to determine whether the patentee acted as his own lexicographer of a term that already has an ordinary meaning to a person of skill in the art.
>
> When a patentee acts as his own lexicographer in redefining the meaning of particular claim terms away from their ordinary meaning, he must clearly express that intent in the written description. We have repeatedly emphasized that the statement in the specification must have sufficient clarity to put one reasonably skilled in the art on notice that the inventor intended to redefine the claim term.

Merck & Co. v. Teva Pharms. USA, Inc., 395 F.3d 1364, 1370-71 (Fed. Cir. 2005) (citations and footnote omitted).

SRT does not argue that Claim 16 itself mentions stress (which it does not), or that "stress" and "depression" mean the same thing in their ordinary and customary senses. Instead, SRT maintains that because the specification for the '308 patent describes stress as a primary cause of depression, Claim 16 should be read as a right to exclude the use of 6-MBOA to treat stress. In particular, SRT emphasizes the following passage in the specification's "State of the Art" section: "Clinical depression is characterized by a list of symptoms that last over a long time span. It is a serious problem that is usually or initially caused by outside stressors. As stresses escalate or persist, a chemical imbalance can result." ('308 patent at 1:23-28.)

But listing stress as a usual or initial cause of depression is not the same as expressly defining the two words as coextensive. For example, the specification does not define stress as a

lesser form of depression or state that stress inevitably leads to depression. Moreover, it would seem from the cited passage that a treatment for depression would have to do more than treat stress alone, since the specification states that depression consists of many symptoms and is a chemical imbalance caused by persistent stress. It is not sufficiently clear at this point, then, that the '308 patent's specification can be read to teach that treating stress and treating depression are one and the same. See Merck, 395 F.3d at 1371 (rejecting patentee's assertion that specification varied a term's ordinary meaning when specification was insufficiently clear in doing so). See also PSC Computer Prods. Inc. v. Foxconn Int'l, Inc., 355 F.3d 1353, 1359 (Fed. Cir. 2004) ("specifications cannot be utilized to expand the patent monopoly") (citations omitted) and Johnson & Johnson Assoc. Inc. v. R.E. Serv. Co., Inc., 285 F.3d 1046, 1052 (Fed. Cir. 2002) ("After all, the claims, not the specification, provide the measure of the patentee's right to exclude.").

SRT also argues that Univera and Unigen have essentially admitted that Univera's products containing 6-MBOA come within the '308 patent by labeling those products with the patent. But "marking estoppel, like other varieties of estoppel, should arise only when a consideration of all aspects of a defendant's pertinent conduct makes it inequitable for him to take a position contrary to his prior statements or actions." Boyd v. Schildkraut Giftware Corp., 936 F.2d 76, 79 (2d Cir. 1991). Here, it appears that Univera only started marking its products with the '308 patent as an attempt to further settlement negotiations in this suit, and was not intentionally disclaiming its position that the patent did not apply. It does not strike the court as

unfair to allow Unigen and Univera to deny that the '308 patent applies now that the settlement talks have ended and the litigation is underway.[4]

In sum, SRT has not shown that Univera's marketing and selling products containing 6-MBOA as a treatment for stress is likely to infringe on Claim 16 of the '308 patent. Consequently, SRT has not shown that it is likely to succeed on the merits against either Unigen or Univera on its patent infringement claim.

## II.     Other Preliminary Injunction Factors

The conclusion that SRT is not likely to succeed on the merits of its patent infringement and breach of contract affects the consideration of the final three preliminary injunction factors: the presence of irreparable harm, a weighing of the balance of potential harms, and the public interest.  See Medspring Group v. Feng, 368 F. Supp. 2d 1270, 1276 (D. Utah 2005). Consideration of these factors does not weigh in favor of issuing an injunction in this case.

### A.     Irreparable Harm

SRT argues that it is entitled to a presumption of irreparable harm, but that presumption only applies to patent holders who have shown a likelihood of success on the merits, which SRT has not done.  See, e.g., Anton/Bauer, Inc. v. PAG, Ltd., 329 F.3d 1343, 1353 (Fed. Cir. 2003).

SRT further claims that it may go out of business if Univera's royalty-free sales continue. Possible bankruptcy is the type of irreparable harm that an injunction can be granted to prevent. See, e.g., Doran v. Salem Inn, Inc., 422 U.S. 922, 932 (1975).  But there is nothing on the record that strongly supports the conclusion that SRT is in imminent danger of folding.  And even if

---

[4]Unigen and Univera ask the court to "provide instructions" on whether to continue to label Univera's 6-MBOA-containing products with the '308 patent.  As Unigen and Univera surely know, the court does not make a decision on the merits of the case on a motion for preliminary injunction, nor is the court in the business of giving legal advice.  It is entirely up to Univera to decide how it labels its products.

SRT were facing such a possibility, there is no indication that the business and financial obstacles SRT cites were caused by Univera's sales of products containing 6-MBOA, or that stopping those sales would remedy those problems. In fact, SRT's proposed injunction could harm SRT in the long run.  That is, while stopping Univera from selling products containing 6-MBOA will not put any money in SRT's coffers now, it could actually result in less royalties for SRT if it prevails at the end of this litigation. Accordingly, it does not appear that granting this injunction would prevent SRT from going out of business.

     SRT argued at the hearing that (1) the exclusivity of Unigen's license prevents it from contracting with other marketers for Seroctin, causing irreparable harm and (2) that potential licensees might decide not to contract with SRT if Univera's sales continue.  On the second point, SRT reasons that Univera's royalty-free sales of 6-MBOA-containing products to treat stress might signal to other market players that they do not need to bother getting a license to sell such products, causing irreparable harm to SRT.

     First, SRT already has another licensee in Protech, and has the right to sell Seroctin in non-extract form.  Second, SRT's market theory is wholly speculative.  If hypothetical marketers are monitoring payment or non-payment of royalties between Univera and SRT, they must also know that SRT has sued Univera for infringement.  It is pure conjecture that a corporation might view the court's declining to preliminarily enjoin Univera's sales of products containing 6-MBOA for stress as an "all clear" for them to do the same with no possible consequences.

     In sum, SRT has not shown how its proposed injunction would prevent it from going out of business.  Nor do SRT's other claims of irreparable harm have any support from the record.

B.     Balance of Injuries to the Parties

When a party has not prevailed on the first two factors for a preliminary injunction, it is not crucial to address the second two. See Anton/Bauer, 329 F.3d at 1353. In any event, these factors appear to favor Unigen and Univera. As explained, it is not clear how Univera's sales of products containing 6-MBOA are harming SRT. If SRT is indeed due royalties on Univera's sales, it would seem to harm all the parties if those sales were halted. Meanwhile, if SRT is correct that about half of all of Univera's products contain 6-MBOA, then the harm to Univera in ordering it to stop selling such products would be enormous. The balance of the harms therefore tilts against SRT.

C.     Public Interest

Here, SRT has not established that it has a likely chance of succeeding on the merits. In this circumstance, the issuance of an injunction in SRT's favor would not serve the public interest. See Abbott Labs. v. Andrx Pharms., Inc., 452 F.3d 1331, 1348 (Fed. Cir. 2006) ("Although the public interest inquiry is not necessarily or always bound to the likelihood of success on the merits . . . we agree . . . that the public interest is best served by enforcing patents that are likely valid and infringed. As Abbott did not establish a likelihood of success on the merits, we conclude that the public interest is best served by denying the preliminary injunction.").

For the above reasons, SRT has not shown that it is entitled to injunctive relief.

**ORDER**

For the foregoing reasons, the court orders as follows:

SRT's Motion for Preliminary Injunction (Dkt. No. 9) is DENIED.

Unigen and Univera's Motion to Strike (Dkt. No. 26) is GRANTED in part and DENIED in part. The materials will not be stricken from the record.

Unigen and Univera's Motion to Strike Brett Johnson's Declaration (Dkt. No. 35) is DENIED as moot.

DATED this 8th day of February, 2008.

> BY THE COURT:
>
> *[signature: Tena Campbell]*
>
> TENA CAMPBELL
> Chief Judge